# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VERONICA KRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-739-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter to the Commissioner for further administrative development.

I.     **PROCEDURAL BACKGROUND**

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 138-46). On appeal, the Appeals Council ordered remand for

further administrative findings. (TR. 154-55). Following a second hearing, the ALJ issued another unfavorable decision. (TR. 40-51). The Appeals Council denied Plaintiff's request for review. (TR. 11-13). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2006, the alleged onset date. (TR. 40). At step two, the ALJ determined that Ms. Kraft had the severe impairments of "tardikinesia, congestive heart failure, psychogenic movement disorder, and essential tremor. . ." (TR. 43). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 44-45).

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as an office helper. (TR. 49). In doing so, the ALJ concluded that Plaintiff's past relevant work was not precluded by her residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except that she can reach overhead with the right shoulder only occasionally [and] [s]he cannot climb stairs or scaffolding.

(TR. 45).

Even though the ALJ concluded that Ms. Kraft could perform her past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC

2

in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 88). Given the limitations, the VE testified that Plaintiff could perform three light/semi-skilled jobs. (TR. 89). The ALJ adopted the testimony of the VE and concluded alternatively that Ms. Kraft was not disabled based on her ability to perform the identified jobs. (TR. 50).

### III. ISSUES PRESENTED

On appeal, Ms. Kraft challenges the RFC as deficient, arguing that the ALJ: (1) improperly characterized Plaintiff's psychogenic disorder to presume that Plaintiff was "malingering" and could control her symptoms, (2) failed to consider Plaintiff's anxiety when assessing the RFC, (3) ignored a portion of consultative physician's opinion, and (4) failed to include particular limitations in the RFC.[1]

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir.

---

[1] At the end of her brief, Plaintiff states: "The basis for the ALJ's failure to include any stress and concentration limitations in his assessment of Kraft's RFC was not the medical evidence, but finding Kraft capable of semi-skilled work. If the ALJ had, as he did in his previous decision, included limitations that limited Kraft to unskilled work, the grids would direct a finding of disability when she turned 55 on May 11, 2011." (ECF No. 18:16). Plaintiff has neither provided support for her allegation that the ALJ's RFC determination was based on a finding that Ms. Kraft could perform semi-skilled work nor has she otherwise developed argument that the evidence supports a finding of unskilled work and a presumptive finding of disability based on the grids. As a result, the Court concludes that Ms. Kraft has waived any argument in this regard. *See Murrell v. Shalala,* 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review" are forfeited); *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review.")

2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.	ANALYSIS

As noted by the ALJ, Ms. Kraft has been seen by a variety of physicians for complaints relating to difficulty speaking and involuntary facial and body movements. (TR. 43). As a result, at step two, the ALJ found that Ms. Kraft suffered from severe Psychogenic Movement Disorder (PMD). (TR. 43). PMD is characterized by unwanted movements, such as spasms, shaking, or jerks involving any part of the face, neck, trunk or limbs.[2] In addition, some patients may have problems with their speech, bizarre gait, or difficulties with balance that are caused by underlying stress or some psychological condition.[3] There is no physical cause underlying PMD and most psychogenic movements are considered involuntary and act as a manifestation of how an afflicted individual's body responds to stress.[4] Ms. Kraft's various arguments involve allegations surrounding this condition.

---

[2]	https://www.bcm.edu/healthcare/care-centers/parkinsons/conditions/psychogenic-movement-disorders

[3]	https://www.bcm.edu/healthcare/care-centers/parkinsons/conditions/psychogenic-movement-disorders

[4]	https://www.bcm.edu/healthcare/care-centers/parkinsons/conditions/psychogenic-movement-disorders

4

First, Plaintiff alleges the ALJ improperly concluded that "psychogenic": (1) was synonymous with "malingering," and (2) presumed that Ms. Kraft was able to control her symptoms. Second, Plaintiff argues that the ALJ failed to consider her anxiety when formulating the RFC. Third, Ms. Kraft argues that the ALJ ignored a portion of an opinion from a consultative physician which involved functional limitations resulting from the PMD. And fourth, Ms. Kraft argues that the ALJ erred by failing to include limitations from the PMD in the RFC. The Court rejects the first and second points of error, but finds merit in Plaintiff's third argument that the ALJ improperly ignored evidence involving functional limitations owing to the PMD. The Court need not address Plaintiff's fourth allegation of error, as it will be addressed on remand following the ALJ's re-consideration of the omitted evidence.

### A. The ALJ's Consideration of "Psychogenic"

Citing the ALJ's reliance on three opinions, Ms. Kraft argues that the ALJ improperly concluded that "psychogenic": (1) was synonymous with "malingering" and (2) presumed that Ms. Kraft was able to control her symptoms. Ms. Kraft challenges the ALJ's reliance on opinions from Dr. Kersi Bharucha, Dr. Joseph Jankovic, and Dr. Steven Grill. Specifically, Plaintiff argues that the ALJ: (1) improperly characterized Dr. Bharucha's opinion to conclude that Plaintiff was malingering and could control her symptoms, (2) improperly relied on Dr. Jankovic's opinion to find that Plaintiff was malingering, and (3) Dr. Grill's opinion provided support that Plaintiff's symptoms were involuntary.

### 1. Dr. Bharucha

Following a July 12, 2010 examination, Dr. Bharucha opined that Ms. Kraft could have a mild form of tardive akathisis, but that "[Plaintiff] has significant features of embellishment, and [Dr. Bharucha] would consider the possibility of a somatization disorder." (TR. 906). Plaintiff argues that the ALJ mischaracterized Dr. Bharucha's opinion and improperly relied on it to conclude that Plaintiff was malingering and could control her symptoms. The Court rejects Plaintiff's arguments.

In the decision, the ALJ mentions Dr. Bharucha's opinion twice. First, while rating the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, the ALJ stated: "At the claimant's July 12, 2010 neurological examination, Ms. Kraft . . . was noted to have significant features of embellishment, and the doctor noted the possibility of a somatization disorder." (TR. 44). The ALJ again cited Dr. Bharucha's opinion when discussing Plaintiff's credibility. In doing so, the ALJ noted that "[t]he findings regarding the claimant's allegations of abnormal movements and pain are inconsistent and vary greatly among doctors." (TR. 46). The ALJ then discussed five different opinions, including the one given by Dr. Bharucha. (TR. 46). According to Ms. Kraft, the ALJ mischaracterized Dr. Bharucha's opinion and improperly relied on it, because "Dr. Bharucha did not question the sincerity of Kraft's symptoms; he only observed they were psychologically based." (ECF No. 18:15).

Plaintiff correctly notes that Dr. Bharucha found that Plaintiff's symptoms might be psychologically based, as the physician left open the possibility that Plaintiff was

6

suffering from a somatization disorder.[5] Citing the DSM-IV-TR, Ms. Kraft states that "[s]omatic complaints are not intentional or under the person's voluntary control[ ] [and] [i]t would be improper to characterize a claimant's somatic complaint as a form of malingering." (ECF No. 18:15). Through this argument, it appears as though Ms. Kraft believes that the ALJ had misinterpreted Dr. Bharucha's opinion to conclude: (1) Plaintiff was "malingering" and (2) Dr. Bharucha's opinion supported a finding that Ms. Kraft could control her movements. The Court rejects Ms. Kraft's argument for three reasons.

First, there is no evidence that the ALJ had rejected the portion of Dr. Bharucha's opinion which stated that Plaintiff's symptoms could be psychologically based. Indeed, in the decision, the ALJ remarked that "many of Plaintiff's evaluations have noted that the claimant's symptomology is psychogenic." (TR. 44). The ALJ noted that Plaintiff's "abnormal movements are worsened during times of stress and anxiety, and lessened at other times." (TR. 44). Thus, the ALJ appeared to believe that Ms. Kraft's disorder had a psychological component which was aggravated with stress. Second, the ALJ did not mischaracterize Dr. Bharucha's opinion to conclude that Ms. Kraft could control her movements, he simply gave an accurate recitation of the doctor's findings. (TR. 44, 46). Finally, and most importantly, Dr. Bharucha's opinion *did* provide support to discount Plaintiff's credibility, despite her allegations otherwise.[6]

---

[5] Somatization disorder is a psychiatric condition marked by multiple medically unexplained physical, or somatic, symptoms which interfere significantly with a person's ability to perform important activities, and lead the person experiencing the symptoms to seek medical treatment. http://www.minddisorders.com/Py-Z/Somatization-disorder.html

[6] Although the ALJ relied on Dr. Bharucha's opinion to discount Plaintiff's credibility, the ALJ never made an affirmative finding that Plaintiff was "malingering." (TR. 40-51).

Plaintiff's argument is solely based on Dr. Bharucha's opinion which stated that Ms. Kraft had "possible somatization disorder." (ECF No. 18:14-15). But Ms. Kraft ignores the fact that Dr. Bharucha also opined that Plaintiff "ha[d] significant features of embellishment." (TR. 906). Based on *that* statement, the ALJ was entitled to discount Plaintiff's credibility with Dr. Bharucha's opinion providing evidentiary support. The ALJ did so, and his finding was not improper, based on Dr. Bharucha's clear opinion. Based on the forgoing, the Court rejects Plaintiff's arguments as they relate to Dr. Bharucha.

### 2. Dr. Jankovic

Plaintiff also alleges that the ALJ "equated psychogenic with malingering" when he relied on Dr. Jankovic's opinion. According to Ms. Kraft:

> [T]he ALJ cited to a physician's findings from July 2011, where the physician noted Kraft as having significant problems with involuntary movements. The ALJ followed by noting the 'same doctor' stated that Kraft's statements where 'clearly psychogenic.'

(ECF No. 18:15). Plaintiff accurately represents the ALJ's recitation of Dr. Jankovic's findings in the administrative decision. (TR. 47). But a plain reading of the decision fails to disclose that the ALJ had equated Dr. Janovic's opinion with a finding that Plaintiff was malingering. The ALJ's findings on Dr. Janovic's opinions were made during a recitation of the medical evidence. The ALJ does not affirmatively state whether he had adopted the opinion of Dr. Jankovic, and the ALJ never states that he had equated Dr. Janovic's opinion to mean that Plaintiff had been malingering. Accordingly, the Court rejects Plaintiff's challenge involving Dr. Jankovic's opinion.

### 3. Dr. Grill

Finally, Ms. Kraft points to an opinion from Dr. Grill as support for a finding that Plaintiff's symptoms were involuntary. As noted by Plaintiff, the ALJ gave "great weight" to Dr. Grill's findings that Ms. Kraft's movements were psychogenic and involuntary. *See* TR. 47-48 ("Dr. Grill concluded that the claimant suffered from a psychogenic movement disorder, and her involuntary movements do not conform to a physiological pattern. . . . Dr. Grill's findings have been given great weight. They are detailed, supported, and consistent with the other substantial evidence in the record."). As part of her argument that the ALJ improperly equated "psychogenic" with "voluntary," Plaintiff offers Dr. Grill's opinion as support for her claim that her movements, although psychogenically based, are involuntary. But the ALJ's reliance on Dr. Grill's opinion solidifies the fact that the ALJ does not equate "psychogenic" with "voluntary," based on the ALJ's adoption of Dr. Grill's opinion which stated that Ms. Kraft's movements were involuntary and affording it "great weight."

### 4. Summary

Plaintiff believes that the ALJ had equated various physicians' findings that Plaintiff's symptoms were "psychogenic" with a conclusion that Plaintiff was malingering and could control her symptoms. As discussed, the ALJ had a valid basis to discount Plaintiff's credibility based on Dr. Bharucha's opinion that Ms. Kraft had "significant features of embellishment." Additionally, the record is absent of any findings that the ALJ had interpreted Dr. Janovic's findings that Plaintiff's symptoms were "psychogenic" to mean that Plaintiff had been malingering. And finally, the ALJ's affirmative reliance

9

on Dr. Grill's findings discount Plaintiff's argument that the ALJ had equated "psychogenic" to mean that Plaintiff's movements were voluntary. The ALJ clearly believed that Ms. Kraft's symptoms were psychogenic in nature and that she could not control her movements. However, the ALJ had a valid basis on which to discount the Plaintiff's allegations, as discussed.

### B. The ALJ's Consideration of Plaintiff's Anxiety in the RFC

At step two, the ALJ concluded that Plaintiff's medically determinable impairment of anxiety disorder did not cause more that minimal limitation in the claimant's ability to perform basic mental work activities, and was therefore, not a "severe" impairment. (TR. 43). In a somewhat cursory argument, Plaintiff states: Regardless of whether Kraft's anxiety was severe or nonsevere, the ALJ was still required to consider Kraft's anxiety when determining the RFC assessment." (ECF No. 18:12). The Court concurs with Plaintiff's statement and concludes that the ALJ satisfied this requirement.

For example, when discussing the medical evidence, the ALJ noted that one physician concluded that claimant's symptoms may be anxiety related, and another doctor stated that Plaintiff's tic became worse when she "became excited." (TR. 46). The ALJ also discussed an opinion from Dr. Bassam Saliba who noted that Ms. Kraft became dystonic when nervous, and "settled down" when she became comfortable. (TR. 49). Thus the Court rejects the Plaintiff's argument regarding a failure to consider her anxiety when assessing the RFC.

## C. The ALJ's Consideration of Dr. Fuchs' Opinion

On December 6, 2010, Dr. Raymond Fuchs performed a consultative psychological examination of Ms. Kraft. (TR. 931-38). In his decision, the ALJ discussed portions of Dr. Fuchs' opinion, but the ALJ's selective review was improper as he should have discussed Dr. Fuchs' opinions concerning Plaintiff's various functional limitations.

For example, at steps two and three, in assessing Plaintiff's level of mental functioning, the ALJ gave the following summary of Dr. Fuchs' examination and findings:

> She was found to be cooperative and oriented times four. She displayed strong intellectual powers and spoke with very lisping voice. The psychologist observed that the claimant had spasmodic, tic-like behaviors and reflexive actions that appeared to derive from her neurological condition. Her recent and long-term memory were intact, but she had some impairment in repetitive recall phonetically. Her affect was expressive with congruent mood and a mildly depressed appearance. There was no indication of audiovisual hallucinations, and judgment and insight were intact. The diagnoses were anxiety disorder with primary focus somatic concerns and dysthymic disorder, both of these conditions were indicated to mildly to moderately interfere with functioning.

(TR. 44). In doing so, the ALJ relied, in part, on Dr. Fuchs' opinion that Ms. Kraft suffered from only "mild" levels of mental functioning. (TR. 44).

And during his recitation of the medical evidence in evaluating the RFC, the ALJ noted that Dr. Fuchs' noted "somatic concerns" as a primary focus and:

> During the examination, it was observed that the claimant displayed pervasive symptoms of an individual with pronounced speech impediment and facial movements and expression resembling reflexive actions similar to either the tardive dyskinesia or possibly neurological incident, etiology unknown. The psychologist found that the claimant displayed high cognitive capability of thought despite this outward appearance of impediment. The doctor noted that Ms. Kraft has proceeded with

obtaining a nursing degree and counseling license despite other handicaps and setbacks.

(TR. 46-47). The ALJ relied, in part, on Dr. Fuchs' opinion in formulating the RFC which allowed for light work, as defined in 20 C.F.R. § 404.1567(b) with the additional limitations of only being allowed to reach overhead with her right shoulder occasionally and no climbing stairs or scaffolding. (TR. 45). According to Plaintiff, the ALJ ignored two critical portions of Dr. Fuchs' opinion without explanation. Ms. Kraft is correct.

First, Dr. Fuchs rendered an opinion regarding Plaintiff's "sustained concentration and persistence." According to the doctor, Ms. Kraft had a "serious" impairment in this area "as a result of her physical pain, strength and stamina limitations, and depressive elements as a result of her discomfort and impairments." (TR. 937). This opinion is clearly inconsistent with the ALJ's finding that Ms. Kraft suffered from "mild" difficulties in the area of concentration, persistence, and pace and the ALJ did not explain the inconsistency or otherwise acknowledge Dr. Fuchs' opinion. (TR. 44). Second, Dr. Fuchs rendered an opinion regarding Ms. Kraft's ability to adapt in the workplace, considering her limitations. Dr. Fuchs stated, in part:

> Presently, primarily by virtue of her strong muscular skeletal stamina and strength limitations[,] to be unable to adapt to frequent changes of complexity which demand physical exertion. She has limitations of time she is able to stand on her feet and move about.

(TR. 937). As alleged by Ms. Kraft, the ALJ did not mention this portion of Dr. Fuchs' opinion regarding Ms. Kraft's ability to adapt to certain situations in the workplace which might demand physical exertion or involve limitations on standing and walking. *See* TR. 40-51. Defendant attempts to excuse the omission, arguing: (1) "the record as

a whole indicated that although Plaintiff presented with abnormal movements, those movements generally did not affect her mental status, or her ability to walk normally" and (2) "there is no requirement in the regulations for a direct correspondence between a [residual functional capacity] finding and a specific medical opinion on the functional capacity in question." (ECF No. 24:17). The Court is not persuaded by Ms. Colvin's arguments.

First, Plaintiff is not challenging the sufficiency of the evidence to support the RFC, rather she is alleging that the ALJ committed legal error in his consideration of Dr. Fuchs' opinion. Thus, Plaintiff's first argument is without merit.

Second, regarding the need for "direct correspondence" between the RFC and a specific medical opinion, Defendant cites *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). While Defendant's quote is accurate, the error here was not in a failure to line up an RFC with a verbatim recitation from the medical opinion. Instead, the ALJ relied on a portion of physician's opinion, while ignoring a portion of the same opinion regarding specific functional effects. The Tenth Circuit Court of Appeals has repeatedly held that this type of selective review is improper, and in fact repeated the warning in *Chapo,* stating:

> [T]he ALJ fully discounted the bulk of [a physician's] mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not. That is error under this circuit's case law. We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.

*Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (citing *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.

2004), and *Hamlin v. Barnhart,* 365 F.3d 1208, 1219 (10th Cir. 2004)) (internal quotation marks omitted).

Here, the ALJ did precisely what the Tenth Circuit has cautioned against—although the ALJ did cite some of Dr. Fuchs' opinion, he completely ignored critical portions of the opinion which concerned functional limitations and Plaintiff's ability to adapt in the workplace. The omission was critical, as the findings could have affected the RFC determination regarding Ms. Kraft's ability to walk and stand. As a result, the Court reverses and remands for further consideration of Dr. Fuchs' entire opinion. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (reversing and remanding because the ALJ should have explained why he had rejected some of the consulting doctor's restrictions in the RFC, "while appearing to adopt the others.").

### D. The ALJ's Failure to Include Limitations in the RFC

Finally, Ms. Kraft argues that the ALJ failed to include any limitations in the RFC owing to her psychogenic disorder, despite the ALJ's finding of a "severe" psychogenic disorder at step two and Dr. Fuchs' opinions concerning limitations in concentration. But the Court need not address these allegations, as the RFC will be affected on remand following further review of Dr. Fuchs' opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

### ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the

parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

ENTERED on August 5, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE